IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-01072-MSK-CBS

CLAIRE L. HUCKFELDT,

    Plaintiff,

v.

BAC HOME LOANS SERVICING, LP, fka COUNTRYWIDE HOME LOANS SERVICING, LP;
CASTLE, MEINHOLD & STAWIARSKI, LLC; and
CRISTEL D. SHEPHERD, individually and in her Official Capacity as Attorney,

    Defendants.

_____

OPINION AND ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT
_____

**THIS MATTER** comes before the Court pursuant to Defendant BAC Home Loans Servicing LP's ("BAC") Motion to Dismiss **(# 55)**, Ms. Huckfeldt's response **(# 70)**, and BAC's reply **(# 73)**; Defendant Castle, Meinhold & Stawiarski, LLC ("CM&S") and Ms. Shepherd's Motion for Summary Judgment **(# 91)**, Ms. Huckfeldt's response **(# 98)**, and CM&S' reply **(# 103)**; and BAC's Motion for Summary Judgment **(# 102)**, Ms. Huckfeldt's response **(# 109)**, and BAC's reply **(# 111)**.[1]

## **FACTS**

The Court summarizes the operative facts here and elaborates as necessary in its analysis.

---

[1] Ms. Huckfeldt has periodically filed documents entitled "Request for Judicial Notice" **(# 76, 107)**, attaching various documents, as well as additional responses to the Defendants' motions **(# 108, 112)**. The Court has considered all of the filings in the record in conjunction with the motions herein.

In 2003, Ms. Huckfeldt purchased a parcel of real property in Littleton, Colorado. That purchase was financed by means of an approximately $ 200,000 loan from Rocky Mountain Mortgage Specialists ("RMMS"). In or about 2004, RMMS transferred the loan to Countrywide Home Loans, Inc., although as noted below, the precise identification of the transferee is an issue central to Ms. Huckfeldt's claims here. From 2004 to 2008, Ms. Huckfeldt made payments to on the loan, but financial reversals caused Ms. Huckfeldt to cease making payments after May 2008. In or about October 2008, CM&S, acting on behalf of the alleged holder of the loan, commenced a foreclosure proceeding against Ms. Huckfeldt's property. That proceeding was later withdrawn, but in October 2009, CM&S re-commenced foreclosure proceedings, and Ms. Huckfeldt's property was sold to BAC for the outstanding amount on the loan.

Ms. Huckfeldt contends that, at various times during the foreclosure proceedings, CM&S, acting through Ms. Shepherd, has purported to be acting on behalf of three distinct business entities: "Countrywide Home Loans, Inc." ("the Corporation"), "Countrywide Home Loans Servicing, LP" ("the Partnership"), and BAC (denoted as being "formerly known as" the partnership).[2] She points out that the initial foreclosure was brought in the name of the Corporation, but "there was no paperwork submitted" showing that the Corporation "changed its name or changed its business formation type from a corporation to a limited partnership." Moreover, she contends that although CM&S purported to be representing the Corporation in bringing the initial foreclosure action, when CM&S purported to withdraw that proceeding, it did so using the Partnership's name instead. She contends that because CM&S "withdrew the first

---

[2]When the identity of the business entity is critical to an understanding of the issues, the Court will use the terms "Corporation," "Partnership," or BAC, as appropriate. When the identity of the business entity involved is not germane to the discussion, the Court will simply refer to it as "Countrywide."

foreclosure with an incorrect name, I do not think the withdrawal . . . is legal." She also alleges that BAC "does not appear to exist" and "is not registered to do business in the State of California" where it is allegedly incorporated.

Ms. Huckfeldt asserts four enumerated claims: (i) violation of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692g(a)(3), in that "none of the defendants . . . offered [her] the right to dispute the debt" with regard to the 2009 foreclosure; (ii) violation of the FDCPA, 15 U.S.C. § 1692e(2)(A), in that the Defendants "misreprensent[ed] the second foreclosure . . . as having the status of a legal debt," when, in fact, the debt was not legal; (iii) violation of the FDCPA, 15 U.S.C. § 1692j, in that the Defendants "furnished deceptive forms to the Public Trustee . . . to initiate and complete [the 2009] foreclosure" because those forms misstated that BAC "had the legal right to initiate a foreclosure" when it did not; and (iv) violation of the Real Estate Settlement Procedures Act ("RESPA"), 24 C.F.R. § 3500.21(d)(1), insofar as the Defendants did not notify her of each instance in which her loan was transferred, and that BAC does not fall within the exceptions to that provision because it was not "operating legally (registered with the IRS and the Secretary of State of California)."

Although BAC moves to dismiss **(# 55)** Ms. Huckfeldt's claims against it, BAC has subsequently moved for summary judgment **(# 102)** on the same claims for essentially the same reasons. Accordingly, the Court will first turn to BAC's summary judgment motion. CM&S has also moved for summary judgment **(# 91)**. The Court will address the parties' arguments as part of its analysis.

## ANALYSIS

### A. Standard of review

#### 1. *Pro se* filings

Ms. Huckfeldt pursues this matter *pro se*. In considering her filings, the Court is mindful of that status, and accordingly, reads her pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in Ms. Huckfeldt's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve her of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat Ms. Huckfeldt according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

#### 2. Summary judgment standard

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of

and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B. FDCPA claims**

Because the claims against BAC, on the one hand, and CM&S & Ms. Shepherd on the other hand, are closely intertwined and dependent on the same facts, the Court will address both

motions simultaneously.

Turning first to Ms. Huckfeldt's FDCPA claims, a common element of each of these claims requires Ms. Huckfeldt to show that the Defendants were engaging in "debt collectionr," as defined by 15 U.S.C. § 1692a, at the time they engaged in the alleged conduct. The Defendants argue that, as a matter of law, a person commencing a non-judicial foreclosure proceeding is not engaged in debt collection activities under the statute.

The Court begins with a recitation of the relevant facts. On Setpember 26, 2008, CM&S sent a letter to Ms. Huckfeldt stating "we are sending this letter to you on behalf of Countrywide Home Loans, Inc., the current holder of your note." The letter went on to explain that "their records indicate that your loan is in default." Beyond providing Ms. Huckfeldt with the contact numbers of the Colorado Foreclosure Prevention Hotline and Countrywide's Loss Mitigation Department, as well as CM&S' own number, the letter did not request Ms. Huckfeld to take any particular action.

On October 2, 2008, CM&S sent a letter to Ms. Huckfeldt entitled "Notice Required by the [FDCPA]." The opening paragraph of that letter explained that CM&S "has been retained to initiate foreclosure proceedings" on Ms. Huckfeldt's property. The remainder of the notice advised Ms. Huckfeldt of the amount of the debt, that the current creditor was Countrywide, and listed various rights that Ms. Huckfeldt had under the FDCPA. On October 6, 2008, Ms. Huckfeldt wrote to CM&S, stating that, pursuant to her rights under the FDCPA, she was disputing the debt and requesting proof of the debt.

On October 14, 2008, CM&S, though Ms. Shepherd, wrote to Ms. Huckfeldt acknowledging her dispute of the debt. The letter advised that the debt was embodied by a note originally given by Ms. Huckfeldt to RMMS, and that Countrywide was "the current creditor."

The letter supplied her with a copy of the note[3] and a payment history on the note, as provided by Countrywide, and advised her that CM&S advised that it was awaiting a payoff statement from Countrywide and would supply a copy of that when it arrived. The letter invited her to contact Countrywide to "discuss alternatives to foreclosure" and suggested that she consider retaining counsel.

On or about October 27, 2008, CM&S filed a Notice of Election and Demand for Sale, addressed to the Jefferson County Public Trustee. That document stated that the Deed of Trust given by Ms. Huckfeldt had been violated by her default on the note and requested that the Public Trustee advertise for sale and sell the property to pay off the debt on the note. On February 11, 2009, CM&S withdrew the Notice of Election and Demand for Sale, thus terminating the foreclosure proceedings. As discussed in more detail below, this withdrawal appears to have been the result of confusion over which of two notes given by Ms. Huckfeldt to RMMS was the correct embodiment of the debt.

On October 20, 2009, CM&S, through Ms. Shepherd, filed a new Notice of Election and Demand for Sale. On or about January 14, 2010, the Colorado District Court for Jefferson County conducted a hearing under C.R.C.P. 120 and concluded that a default existed and issued an order authorizing the sale of the property. On February 24, 2010, the Public Trustee conducted a foreclosure sale, selling the property to BAC.

      1. Foreclosure activities as "debt collection"

---

[3] Later correspondence indicates that Ms. Huckfeldt did not receive a copy of the note along with the October 14, 2008 letter. On November 11, 2008, Ms. Shepherd sent Ms. Huckfeldt another copy of that note.

In seeking summary judgment on the FDCPA claims against them, the Defendants[4] argue that because the only activities they are alleged to have engaged in relate to commencing and pursuing a foreclosure proceeding, those acts do not constitute debt collection activities under the statute; rather, they contend that foreclosure proceedings are attempts to enforce a security interest by the lender.

The 10th Circuit addressed this contention, without resolving it, in *Maynard v. Cannon*, 401 Fed.Appx. 389, 394-95 (10th Cir. 2010) (unpublished). *Maynard*, involving facts essentially identical to those presented here, addressed the question of "whether a non-judicial foreclosure qualifies as debt collection activity under the FDCPA."[5] *Id.* at 394. After noting that "a non-judicial foreclosure does not result in the mortgagor's obligation to pay money – it merely results in the sale of the property subject to a deed of trust," the court proceeded to examine how other jurisdictions had addressed the issue. *Id.* It found that "several district courts have distinguished between judicial and non-judicial foreclosures and concluded that the FDCPA applies to the former but not the latter," typically because the latter does not result in a personal judgment against the mortgagor. *Id.* (citing cases). It contrasted these cases with an admittedly non-foreclosure case from the 7th Circuit that rejected a formulaic examination of the effect of the creditor's activities in determining whether "debt collection" was taking place, and instead

---

[4]Technically, only CM&S and Ms. Shepherd raise this contention. BAC argues that it cannot be held vicariously liable under the FDCPA for actions taken by a debt collector it hires. Because the Court finds that Ms. Huckfedlt has not demonstrated any colorable FDCPA claim, the Court need not reach BAC's argument.

[5]The primary distinction between "judicial" foreclosures and "non-judicial" foreclosures concerns whether the proceeding results in a deficiency judgment against the mortgagor. *Id.* at 391-92. In a judicial foreclosure, a deficiency judgment enters automatically if the foreclosure proceeds are insufficient to discharge the debt; in a non-judicial foreclosure, any deficiency judgment must be sought by the creditor in a separate proceeding. Under this definition, Colorado's foreclosure proceeding is non-judicial.

required an examination of various factors to determine whether "the true purpose" of communications was "to collect the debt – whether through settlement or otherwise – by placing pressure on the consumer." *Id.* at 395, *citing Gburek v. Litton Loan Servicing, LP*, 614 F.3d 380 (7th Cir. 2010). The 10th Circuit concluded that "the initiation of foreclosure proceedings in this case was intended to encourage Maynard to pay her debt – indeed, that is precisely what happened when the threat of foreclosure spurred settlement." *Id.* at 395. Nevertheless, after framing the issue, the 10th Circuit expressly declined to resolve it, noting that even if otherwise covered by the FDCPA, the creditor's communications did not violate the statute.

Because *Maynard* does nothing more than highlight the issue without resolving it, it is of little assistance. However, its framing of the issue is helpful to this Court's resolution of the issue. *Maynard* notes that the primary justification for treating non-judicial foreclosures as falling outside of FDCPA protection is that such proceedings do not result in an *in personam* judgment against the debtor.[6] This Court finds that justification to be unnecessarily semantic. A non-judicial foreclosure action is unquestionably a form of "debt collection," insofar as that potion of the debt that is satisfied by the foreclosure sale is effectively "collected" by the creditor; put differently, no reasonable argument can be made that the creditor can receive

---

[6] A second line of authority, not discussed by *Maynard*, finds foreclosure activities to fall outside the FDCPA on more textual grounds. Cases like *Gray v. Four Oak Court Ass'n, Inc.*, 580 F.Supp.2d 883, 887 (D.Minn. 2008), explain that Congress has defined the term "debt collector" to include both "any person . . . in any business the principal purpose of which is the collection of any debts" and "any person . . . in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6). These cases go on to conclude that if foreclosures (*i.e.* enforcement of security interests) are a form of "debt collection," the latter definition is wholly encompassed by the former and thus rendered superfluous, contrary to principles of statutory interpretation requiring that courts avoid such readings. *But see Kaltenbach v. Richards*, 464 F.3d 524, 528-29 (5th Cir. 2006) (finding foreclosure activities to be "debt collection" despite "security interest" language in § 1692a(6)).

CM&S and Ms. Shepherd's motion does not argue that foreclosure activities are exempt from the FDCPA on this ground, and thus, the Court does not address the issue.

proceeds from the foreclosure yet refuse to credit them against the debtor's balance. (Indeed, where there property's value matches or exceeds the indebtedness, even a non-judicial foreclosure results in the creditor "collecting" the entire amount of the debt.) Whether this "collection" takes the form of execution against secured collateral or a judgment against the creditor (followed by execution against unsecured collateral) would appear to be immaterial; in both cases, the creditor recoups some portion of the indebtedness.

Moreover, the same concerns that animate the FDCPA – creditors dunning the wrong debtor or a debtor who has already paid off the debt, *Maynard*, 401 Fed.Appx. at 396 – are no less present in cases involving foreclosure. Here, CM&S was forced to withdraw the 2008 foreclosure in this case after it learned that the note it was seeking to enforce contained a clerical error and had been deemed void by RMMS, from whom Countrywide obtained its rights. As the court in *Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373, 376 (4th Cir. 2006), explains, holding otherwise "would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt." Indeed, this "loophole" is of particular concern, insofar as foreclosure proceedings pose unusually large risks of unnecessary injury if invoked improperly by creditors.

Accordingly, this Court declines to join those that find that non-judicial foreclosure activities fall outside the scope of the FDCPA simply because they do not result in an *in personam* judgment. Thus, the Court turns to the question of whether Ms. Huckfeldt has adduced facts that constitute a *prima facie* violation of the statute.

    1. <u>Opportunity to dispute the debt</u>

First, Ms. Huckfedlt alleges that she was denied notice of the debt and an opportunity to

dispute it under 15 U.S.C. § 1692g.  Subsection (a) of that statute requires that, upon making an "initial communication" regarding a debt, the debt collector provide the debtor with a written notice containing the amount of the debt, the name of the creditor, a statement that the debt will be assumed to be valid unless the debtor disputes it in writing within 30 days.  If the debtor disputes the debt, the debt collector must obtain and provide the debtor with verification of the debt and the name and address of the original creditor, if different from the current creditor.  15 U.S.C. § 1692g(b).  As *Maynard* notes, "the statute does not detail what information must be included in the verification," although it appears that all that is necessary is to identify the original and current creditors, the debt in question, and the amount in default.  *Id.* at 396-97.

Ms. Huckfedlt admits that she received notice of her right to request verification of the debt referenced in CM&S' October 2, 2008 letter, and that CM&S complied with the FDCPA in providing verification of that debt in response to her October 6, 2008 letter to CM&S.  However, she argues that the withdrawal of the 2008 foreclosure proceeding and the commencement of a new foreclosure proceeding in 2009 constituted an attempt to collect a <u>different</u> debt, thus giving her a new right to be advised of that debt under § 1692g(a) and an opportunity to request that CM&S to provide her with a verification of that debt under § 1692(b).

The question presented, then, is whether the 2008 and 2009 foreclosure proceedings involved one debt or two.  15 U.S.C. § 1692a(5) defines the term "debt" as simply "any obligation or alleged obligation of a consumer to pay money . . . ."  Here, it is undisputed that, although Ms. Huckfeldt signed two different notes to RMMS, she incurred only one obligation to pay money to RMMS.  At her deposition, she was asked "the debt related to the second foreclosure is the same debt that's related to the first foreclosure, right?" to which she responded "The underlying loan is the same underlying loan . . . referred to in both foreclosures.  I agree

with that." Later, asked to explain her "position [in the Amended Complaint] that the debt is different," she responded "I didn't say the debt was different. The collection – the collections are definitely different. They're a year apart; they're for different clients; even the loan amount would change." She added, "so you're asking me if it's referencing the same loan. As far as I know, it is, but I wasn't shown that [BAC] had a right to that loan." From this testimony, the Court understands that Ms. Huckfeldt is not disputing that both the 2008 and 2009 foreclosures were directed at collecting the same <u>debt</u>; rather, she is contending that the creditors involved in collecting that debt are different.

The FDCPA's focus is on "debts," not creditors. 15 U.S.C. § 1692g(a) speaks of disclosures that are required when collecting "any debt," and there after speaks of verification that must be made of "the debt." This language makes clear that notice is required to be given once collection activities begin for each <u>debt</u>, not that notice is required each time collection activities are begun on the same debt but on behalf of a new transferee creditor. This is consistent with the purpose of the FDCPA. As noted in *Maynard*, the purpose of the notice and verification provisions are to permit the debtor the opportunity to ensure that he or she is not being dunned for debts owed by another or for debts that he or she has already paid. Once that verification has been requested by the debtor and obtained by the debt collector, requiring re-verification each time the debt changes hands offers no new protection to the debtor and only serves as a potential trap for subsequent creditors.[7] CM&S and Ms. Shepherd cite cases standing

---

[7]Arguably, there may be circumstances where a debtor could justifiably request re-verification of the amount owed upon transfer of the debt to a new creditor – *e.g.* where the debtor had continued making payments to the prior creditor until a notice of the transfer of debt was received and those payments were not properly credited by the new creditor. But Ms. Huckfeldt cannot contend that she should have been offered an opportunity to re-verify the amount of her debt between 2008 and 2009, as she admits she made no payments on the debt after May 2008, long before CM&S verified the debt initially in October 2008.

for the proposition that only one verification notice per debt is required, even though the debt might pass among different debt collectors. *See e.g. Ditty v. CheckRite, Ltd.*, 973 F.Supp. 1320, 1329 (D.Ut. 1997); *Senftle v. Landau*, 390 F.Supp.2d 463, 473 (D.Md. 2005).  Similar logic suggests that a new notice and verification is not necessary where the <u>same</u> debt collector continues to attempt to collect the <u>same</u> debt previously verified, even though a new creditor has acquired that debt.

In any event, this Court further sees no utility that would have been obtained if Ms. Huckfeldt had been given a new notice of the debt and opportunity to request its re-verifcation under § 1692g with regard to the 2009 foreclosure.  Two items of information that would have been verified – the original creditor and the amount due – would necessarily be unchanged (or at least unchanged in Ms. Huckfeldt's favor, as the amount due might have increased over time due to interest and penalties) since the prior verification..  The only item of verification that would have changed is the identity of the current creditor, and Ms. Huckfeldt was effectively provided with that information in the "initial communication" by CM&S regarding the 2009 foreclosure.  The Notice of Election and Demand for Sale, the first document that Ms. Huckfeldt claims to have received regarding the 2009 foreclosure, identifies the "Holder of Evidence of Debt" as BAC.  Although Ms. Huckfeldt vehemently argues that BAC does not actually own any rights to the debt, the notice and verification provisions of § 1692g are not designed to function as civil discovery or a mechanism to identify and resolve disputes of this type.  As *Maynard* makes clear, "this provision is not intended to give a debtor a detailed accounting of [the] debt to be collected." 401 Fed.Appx. at 396.  The statute requires only an identification of the original creditor, the current creditor claiming to own the debt, and the amount of the debt in arrears.  *Id.*  Because it is undisputed that Ms. Huckfeldt was thus provided with the statutorily-required

information, she cannot show a violation of § 1692g. The Defendants are entitled to judgment on this claim.

### 2. Misrepresentation of the debt

15 U.S.C. § 1692e(2)(A) provides that it is unlawful for a debt collector to "use any false, deceptive, or misleading representation . . . in connection with the collection of any debt." Among those representations that are prohibited are false representations as to "the character, amount, or legal status of any debt." *Id.* Ms. Huckfeldt alleges that the Defendants misrepresented the "legal status" of her debt by contending that it was owed to BAC, when, in fact, Ms. Huckfeldt contends that BAC holds no legal interest in the debt.

Beyond her statement that CM&S "changed their client's name three times in the two foreclosures," Ms. Huckfeldt does not explain the basis on which she contends that CM&S misrepresented the debt as being "legal." As best the Court can tell, Ms. Huckfeldt's contention here is that, contrary to CM&S' representations, the debt was never properly transferred, first from the Corporation to the Parnership, and subsequently from the Parntership to BAC. Ms. Huckfeldt offers no particular evidence in support of this contention, other than the fact that none of these entities sent her a notice of the transfer, as allegedly required by RESPA, 24 C.F.R. § 3500.21(d)(1), and the fact that she never received any correspondence or bills from BAC. In her response to BAC's summary judgment motion, she also contends that the debt was "illegal" because BAC never responded to her dispute as to an alleged $ 8,000 discrepancy in the balance.[8]

---

[8]This argument is patently refuted by evidence Ms. Huckfeldt supplies. On or about September 17, 2008, Ms. Huckfeldt filed a complaint with the Colorado Department of Corporations , asking for an "audit" of her account and stating that "my home loan payoff is >$8,000 more than it should be." *Docket* # 76, Ex. L. She also attaches a response from Countrywide, dated October 9, 2008, that specifically explains the reasons for Ms. Huckfeldt's

Admittedly, CM&S' evidence to the contrary – that the note properly passed from entity to entity – is also somewhat scant. CM&S offers only the affidavit of Deanne Stodden, one of its attorneys, to attest to the fact that "During the pendency of the [2008 foreclosure, CM&S'] client, Countrywide Home Loans, Inc. notified [CM&S] of its name change to Countrywide Home Loans Servicing, LP," and later, that "Countrywide Home Loans Servicing, LP experienced another corporate name change," becoming BAC. The former representation – that the Corporation notified CM&S of a change of name – is an out-of-court statement CM&S and Ms. Shepherd offer for its truth, and thus, falls victim to the hearsay rule; Ms. Stodden gives no information to indicate how she has first hand knowledge of the latter proposition – that the Parntership later changed its name to BAC.

Some edification on this issue comes from BAC's own response to Ms. Huckfeldt's motion. BAC has provided the Court with a copy of records from the State of Texas certifying that the Partnership "changed its name to BAC Home Loans Servicing, LP" on April 21, 2009, several months before CM&S commenced the 2009.[9]

Ms. Huckfeldt's response to this evidence does not dispute that BAC is simply the Partnership operating under a new name; rather, her response is that "BAC has not shown that they have the rights to service a loan in my name." This argument reveals Ms. Huckfeldt's

---

confusion and supplies an itemized list of Ms. Huckfeldt's payments and the corresponding principal balance. *Docket # 76, Ex. M.* Ms. Huckfedlt does not explain how Countrywide's response is in any way incorrect.

[9]Beyond making a vague allegation in her Amended Complaint regarding the change from the Corporation to the Partnership, neither Ms. Huckfeldt nor the Defendants offer any facts or arguments regarding that change. *BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999) (when faced with a motion for summary judgment, a party with the burden of proof may not simply rest on assertions contained within his pleadings, and must come forward by adducing specific facts supporting the claim). Thus, the Court assumes that Ms. Huckfeldt does not continue to press any argument that that transfer was improper.

misunderstanding of the burden of proof that she bears. As the Plaintiff in this action, it is up to Ms. Huckfeldt to affirmatively prove that BAC did not have the right to collect on her note, such that CM&S' representations to the contrary could be deemed "misleading" under the FDCPA; she may not simply make that allegation and wait for BAC to disprove it. Without evidence to support a contention that BAC did not have the legal right to receive payment on the note, Ms. Huckfeldt's claim must fail. Here, the only evidence that Ms. Huckfedlt offers is that BAC never sent her mortgage statements or correspondence in its own name. Such "evidence" is insufficient for multiple reasons. As a legal matter, the mere fact that BAC never contacted Ms. Huckfeldt is not proof that BAC did not legally possess the right to collect on the note – one can obtain legal rights in a promissory note without having any communications with the obligor.[10] Moreover, as a factual matter, the absence of communication between BAC (under that name) and Ms. Huckfeldt is not surprising. As the records above indicate, BAC assumed that name in April 2009, by which point Ms. Huckfeldt's loan had been in default for nearly a year and had been referred to CM&S for foreclosure. There is little reason to believe that BAC would communicate directly with a debtor, rather than through CM&S, in such circumstances.

Accordingly, the Court finds that Ms. Huckfeldt has failed to come forward with evidence sufficient to establish a genuine dispute of material fact with regard to the issue of whether CM&S and Ms. Shepherd "misrepresented" the nature of the debt in violation of 15 U.S.C. § 1692e(2)(A). Thus, the Defendants are entitled to summary judgment on this claim.

       3. Use of misleading forms

---

[10] To the extent Ms. Huckfeldt's argument is premised upon the assumption that BAC was required by RESPA to affirmatively notify her when it obtained the right to collect on her note – such that the lack of notice might indicate that BAC never obtained the right to collect on the note, that issue is addressed *infra*.

Finally, Ms. Huckfeldt contends that CM&S and Ms. Shepherd violated 15 U.S.C. § 1692j. That statute provides that " It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of . . . a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." Ms. Huckfedlt contends that the "forms" used by CM&S – namely the pleadings filed by CM&S in the 2009 foreclosure – falsely represented that BAC had the right to seek foreclosure on the property based on its alleged ownership of the note.

Assuming, without necessarily finding, that Ms. Huckfeldt's argument tracks the statutory prohibition, the preceding discussion makes clear that Ms. Huckfeldt has not come forward with evidence that would create a genuine issue of fact with regard to the question of whether BAC did indeed have the right to collect on the debt and seek foreclosure. Without such evidence, Ms. Huckfeldt cannot show that the forms used by CM&S and Ms. Shepherd were in any way misleading. Thus, the Defendants are entitled to judgment on this claim.

### C. RESPA claim

Finally, Ms. Huckfeldt contends that BAC violated RESPA by not sending her a notification that her loan had been transferred. 24 C.F.R. § 3500.21(d)(1) requires that "each transferor servicer and transferee servicer of any mortgage servicing loan shall deliver to the borrower a written Notice of Transfer," advising of the effective date of the transfer, the customer service address of the new servicer, and various other items of information. However, the same regulation provides that no transfer notice is required in certain circumstances where the change in servicer is not material, such as situations where the transfer is "between affiliates" or "resulting from mergers or acquisitions of services," so long as "there is no change in the

payee, address to which payment must be delivered, account number, or amount of payment due." 24 C.F.R. § 3500.12(d)(1)(i)(A), (B).

Here, BAC has come forward with evidence that Ms. Huckfeldt's loan was not even "transferred," but simply that the entity that owned her loan changed its name. Without a "transfer" of the loan from one entity to another, the notice requirements of § 3500.12(d) are not triggered. Moreover, Ms. Huckfeldt has come forward with no evidence that the payee, address for payment,[11] account number, or amount of the payment changed as a result of BAC's name change. Indeed, Ms. Huckfeldt states that she had no communication with BAC. Under these circumstances, the Court finds that the Defendants are entitled to summary judgment on Ms. Huckfeldt's RESPA claim.

## **CONCLUSION**

For the foregoing reasons, CM&S and Ms. Shepherd's Motion for Summary Judgment **(# 91)** and BAC's Motion for Summary Judgment **(# 102)** are **GRANTED**. The Defendants are

---

[11] Ms. Huckfeldt has submitted correspondence from Countrywide – the Corporation – dated October 2008 with a customer service mailing address of P.O. Box 5170, Simi Valley, CA. *See* Docket # 76, Ex. M at 5. She also submits a copy of an envelope mailed to her from BAC sometime in or about November 10, 2010. *See* Docket # 76, Ex. R. That envelope bears a return address for BAC's customer service department, at P.O. Box 5170, Simi Valley, CA. Thus, it does not appear that the address to which Ms. Huckfedlt would communicate with BAC changed during the period at issue.

entitled to judgment on all claims against them in this action.  The Clerk of the Court shall enter judgment in favor of the Defendants.  BAC's Motion to Dismiss **(# 55)** is **DENIED** as moot.

Dated this 29th day of September, 2011

BY THE COURT:

*/s/ Marcia S. Krieger*

Marcia S. Krieger
United States District Judge